UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:15-cv-01635-JCH |
| | ) | |
| BRETT FERGUSON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Terry Russell's Motion for Summary Judgment. (ECF No. 66.) The Motion has been fully briefed and is ready for disposition.

## BACKGROUND

On October 28, 2015, Plaintiff James Wilson filed this 42 U.S.C. § 1983 action asserting claims of deliberate indifference and medical negligence against various Missouri Department of Corrections ("MDOC") officials and medical personnel. Wilson was appointed counsel in March 2016, and in his Fifth Amended Complaint, he alleges the following.

At all relevant times, Wilson was incarcerated at the Eastern Reception, Diagnostic and Correctional Center ("ERDCC"). Russell was the Warden at the ERDCC. On December 26, 2013, Wilson experienced a sudden and severe headache and severe pain in the vicinity of his left eye. His symptoms matched those he had experienced several years ago, when he suffered a brain aneurysm. (ECF No. 64.) Over the next few days, Wilson saw ERDCC medical staff on several occasions. The medical staff told Wilson that there was nothing wrong with him, and although he explained that he had previously suffered a brain aneurysm, he was denied further evaluation and treatment and was told to return to his housing unit. On December 30, 2013,

1

medical staff referred Wilson to have a CT scan at a local hospital. The next day, Wilson was informed that the scan revealed no bleeding. On January 1, 2014, Wilson saw an optometrist. The optometrist determined that Wilson had a brain aneurysm and immediately referred him to a neurosurgeon. Approximately one week later, Wilson underwent a craniotomy.

With respect to Defendant Russell, Wilson specifically alleges that between the onset of his symptoms and December 30, 2013, he wrote a letter to Russell informing Russell of his medical condition and of the medical staff's refusal to evaluate or treat him, and that Russell did not intervene. Wilson claims that Russell was deliberately indifferent to his serious medical needs, in violation of his Eighth Amendment rights. (ECF No. 64.)

As mentioned above, Russell now moves for summary judgment. Russell argues that Wilson failed to exhaust the required administrative remedies, and that he is entitled to qualified immunity. (ECF Nos. 66, 67.)

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be granted if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, a court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences that may be drawn from the record. *See Hott v. Hennepin Cnty., Minn.*, 260 F.3d 901, 904-05 (8th Cir. 2001) (citation omitted).

The moving party bears the burden of showing the absence of a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Material facts are determined by substantive law, and factual disputes which are irrelevant or collateral do not preclude summary judgment. *See id.* at 248. When a summary judgment motion is properly

supported by evidence, the burden then shifts to the non-moving party who must set forth affirmative evidence showing that there is a genuine issue for trial. *See id*. at 256-57. Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. *See Armour & Co., Inc. v. Inver Grove Heights*, 2 F.3d 276, 279 (8th Cir. 1993).

## DISCUSSION

Russell argues that Wilson failed to properly exhaust his administrative remedies in accordance with the Prison Litigation Reform Act ("PLRA") by not timely filing an Informal Resolution Request ("IRR"), and by failing to include sufficient detail in his IRR allegations.

The PLRA requires inmates complaining about prison conditions to exhaust prison grievance remedies before initiating a lawsuit. *See* 42 U.S.C. § 1997e(a). "[T]he benefits of exhaustion…include allowing a prison to address complaints about the program it administers before being subject to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007) (citations omitted). It is the grievance procedure requirements of the correctional facility, and not the PLRA, that define the boundaries of proper exhaustion. *See Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir. 2014).

The MDOC has a uniform grievance procedure for all Missouri prisons, including the ERDCC. The grievance procedure consists of three stages. At the first stage, a prisoner must present his complaint by filing an IRR within fifteen days of the incident giving rise to the complaint. Each IRR is limited to one grievable issue, and in completing an IRR, a prisoner must provide "whatever material/information is available to him." The IRR is then reviewed and a written response is given to the prisoner. At the second stage, a prisoner who is dissatisfied with the response to the IRR may file an Offender Grievance within seven days of receiving the

IRR response. If the institution's response to the Offender Grievance is not satisfactory, the prisoner may, within seven days of receiving said response, proceed to the third stage and submit an Offender Grievance Appeal. The appeal is then reviewed and a written response is provided to the prisoner, which concludes the grievance process. (Def. Ex. J, ECF No. 68.10.)

The summary judgment record reveals that Wilson completed two IRRs related to the allegations in his pleadings. In his first IRR, filed on February 11, 2014, Wilson stated, in pertinent part:

> Medical malpractice by (Nurse Practitioner) Brett Ferguson for misdiagnosis that I did not have a brain aneurysm, which in fact I did have a brain aneurysm [sic]…
>
> Due to the brain aneurysm, I have ongoing extreme headaches and throbbing in my head and left eye. The pain continues to worsen…
>
> Requesting to continue to be seen by neurologist and optometrist for pain on the basis concerning recent brain aneurysm and damaged left eye due to brain aneurysm.

(Def. Ex. F, ECF No. 68.6 at 1.) In his second IRR, filed on February 18, 2014, Wilson stated, in pertinent part:

> Due to the lack of a medical physician between the dates of December 28, 2013 and January 18, 2014, I was misdiagnosed that I did not have a brain aneurysm [sic] and therefore have suffered almost death by a brain aneurysm…
>
> Due to the trauma that the brain aneurysm I had d[ue] to the negligence of medical not accurately diagnosing/detecting that I was having a brain aneurysm [sic], I request medical attention for my left eye damaged by aneurysm.

(Def. Ex. B, ECF No. 68.2 at 1.) Wilson subsequently filed Offender Grievance forms and Offender Grievance Appeals in connection with his IRRs. In response to each level of grievance, the prison administration provided a written response that considered the substance of, and denied, Wilson's complaint. (Def. Exs. H-I, ECF Nos. 68.8-68.9.)

4

The Court concludes that Wilson's claims are not barred for failure to timely initiate the grievance procedure. The Eighth Circuit has held that the PLRA's exhaustion requirement is satisfied if prison officials decide a procedurally flawed grievance on the merits. *See Hammett v. Cofield*, 681 F.3d 945, 947-48 (8th Cir. 2012) (per curiam). Here, the summary judgment record indisputably shows that Wilson's grievances were denied at every administrative level of review on the merits, and not for failure to comply with procedural filing deadlines. Therefore, Wilson's failure to timely file an IRR does not constitute a failure to exhaust. *See id.* at 948.

Russell also argues, however, that Wilson's failure to specifically mention his name in the IRRs constitutes a failure to comply with the offender grievance policy. As a threshold matter, Wilson's failure to name Russell in his grievance documents does not, by itself, preclude his claim against Russell, as the MDOC procedures do not mandate the naming of every official. *See Jones*, 549 U.S. at 219 ("[E]xhaustion is not per se inadequate simply because an individual later sued was not named in the grievances.") Nevertheless, Wilson not only failed to name Russell, he also failed to allege any of the facts underlying his claim against Russell. Upon review of his IRRs, the essence of Wilson's allegations was that medical staff had acted negligently in misdiagnosing his condition. Under the MDOC's grievance policy, Wilson was required to provide whatever information was available to him at the time he filed an IRR. Even if Wilson did not know Russell's name or official title, or could not recount the precise wording of his letter to Russell, he would have known, and should have communicated, the general nature of Russell's wrongdoing in an IRR. *See Woodford* v. *Ngo*, 548 U.S. 81, 90 (2006) (exhaustion requirement protects correctional institution's authority by compelling inmates "to give the agency a fair and full opportunity to adjudicate their claims"); *see also Walker v. Baker*, No. 4:13 CV 2498 CDP, 2016 WL 4528933, at *2-4 (E.D. Mo. Aug., 30, 2016).

In view of the foregoing, the Court finds that Wilson failed to properly exhaust his deliberate-indifference claim against Russell, and that the claim is therefore precluded in this litigation.[1]

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Terry Russell's Motion for Summary Judgment (ECF No. 66) is **GRANTED**, and that Plaintiff's claim against Defendant Russell is **DISMISSED**.


Dated this 8th day of June, 2017.


/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE

---

[1] Even if Wilson had properly exhausted his claim against Russell, the Court would still find that Russell is entitled to summary judgment on qualified immunity grounds. *See Pearson v. Callahan*, 555 U.S. 223, 231-36 (2009) (discussing doctrine of qualified immunity). Here, the summary judgment record—namely, Russell's affidavit in which he attests that he was out of the office from December 27, 2013 through December 29, 2013, and that he did not receive a letter from Wilson during the relevant time period (Def. Ex. A, ECF No. 68.1)—demonstrates that Russell had no actual knowledge of Wilson's medical condition or of the medical staff's purported refusal to evaluate or treat him. Wilson argues that Russell's attestations do not necessarily impute a lack of knowledge regarding Wilson's medical needs, and that "[t]here is clearly a question of fact on this issue of the letter, and so far as plaintiff alleges in this complaint that [plaintiff] sent one." (ECF No. 78 at 8-9.) However, Wilson does not cite to any evidence in the record that suggests Russell had actual knowledge of his medical condition, and his conclusory assertions, without more, are insufficient at this stage in the litigation to overcome Russell's Motion. *See Meloy v. Bachmeier*, 302 F.3d 845, 848-49 (8th Cir. 2002) (supervisor is only liable for Eighth Amendment violation when supervisor is personally involved in violation or when supervisor's corrective inaction constitutes deliberate indifference toward violation; supervisor must know about conduct and facilitate it, approve it, condone it, or turn blind eye); *Armour & Co., Inc*, 2 F.3d at 279.